IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

ANGELA CAMERON, AS THE
ADMINISTRATRIX OF THE ESTATE OF
ANTHONY CAMERON, DECEASED, FOR
AND ON BEHALF OF HERSELF, AND ON
BEHALF OF ALL OTHER PARTIES
ENTITLED TO RECOVER FOR THE
WRONGFUL DEATH OF ANTHONY
CAMERON                                                                                          PLAINTIFFS

V.                                                          CIVIL ACTION NO. 2:13cv243-KS-JCG

WERNER ENTERPRISES, INC., A FOREIGN
CORPORATION, AND TERRY J. GUILLORY,
AN INDIVIDUAL                                                                                  DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on the Motion for Partial Summary Judgment [135] of the Defendants Werner Enterprises, Inc. ("Werner") and Terry J. Guillory ("Guillory"). Having considered the submissions of the parties, the record, and the applicable law, the Court finds that the motion is not well taken and should be denied.

**I.  BACKGROUND**

This wrongful death action arises out of a commercial vehicle accident that occurred on December 3, 2012, in Perry County, Mississippi. The decedent, Anthony Cameron, was the driver of one of the vehicles involved in the accident. Guillory was the driver of the other vehicle. Guillory was acting within the course and scope of his employment with Werner at the time of the accident.

On November 1, 2013, Angela Cameron (as the Administratrix of the Estate of Anthony Cameron, on behalf of herself, and on behalf of all other parties entitled to recover for the wrongful death of Anthony Cameron) filed suit against Werner and

Guillory in this Court.  (*See* Compl. [1].)  Angela Cameron was Anthony Cameron's wife at the time of his death.  The Complaint asserts allegations of negligence and gross negligence, and requests compensatory damages, punitive damages, interest, attorney's fees, and costs.  Subject matter jurisdiction is asserted on the basis of diversity of citizenship pursuant to Title 28 U.S.C. § 1332.

Plaintiff Abigail Cameron ("Abigail") is the adult daughter of the decedent, but not Angela Cameron.  Anthony Cameron fathered Abigail during his prior marriage to Kelly Rigel.  Abigail was twenty-five (25) years old at the time of Anthony Cameron's death.  Via the subject motion, Defendants seek summary judgment on Abigail's claim for loss of society and companionship.  The motion has been fully briefed and the Court is ready to rule.

## II.  DISCUSSION

### A. Standard of Review

Federal Rule of Civil Procedure 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "Where the burden of production at trial ultimately rests on the nonmovant, the movant must merely demonstrate an absence of evidentiary support in the record for the nonmovant's case."  *Cuadra v. Houston Indep. Sch. Dist.*, 626 F.3d 808, 812 (5th Cir. 2010) (citation and internal quotation marks omitted).  The nonmovant must then "come forward with specific facts showing that there is a genuine issue for trial."  *Id.*  "An issue is material if its resolution could affect the outcome of the action."  *Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 138 (5th Cir. 2010) (quoting *Daniels*

*v. City of Arlington, Tex.*, 246 F.3d 500, 502 (5th Cir. 2001)).  "An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party." *Cuadra*, 626 F.3d at 812 (citation omitted).

The Court is not permitted to make credibility determinations or weigh the evidence.  *Deville v. Marcantel*, 567 F.3d 156, 164 (5th Cir. 2009) (citing *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007)).  When deciding whether a genuine fact issue exists, "the court must view the facts and the inferences to be drawn therefrom in the light most favorable to the nonmoving party."  *Sierra Club, Inc.*, 627 F.3d at 138.  However, "[c]onclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial."  *Oliver v. Scott*, 276 F.3d 736, 744 (5th Cir. 2002) (citation omitted).  Summary judgment is mandatory "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Brown v. Offshore Specialty Fabricators, Inc.*, 663 F.3d 759, 766 (5th Cir. 2011) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)).

**B.     Analysis**

Defendants argue that Abigail's claim for loss of society and companionship fails as a matter of law because she had no relationship with the decedent for over twenty-two (22) years preceding his death.  Defendants focus on the following circumstances in support of this argument.  Abigail lived with her mother and the decedent in Hattiesburg, Mississippi for approximately three years.  After Abigail's mother and Anthony Cameron

divorced, Abigail moved to Greenville, Mississippi and then to Fort Lauderdale, Florida. Abigail lived with her mother and step-father, James Brandt, in Greenville and Fort Lauderdale. Abigail believed that her step-father was her biological father, and she did not find out that Anthony Cameron was her biological father until she was approximately thirteen years old. Abigail's mother told her that she left the decedent because he had been physically abusive to Abigail when she was very young. Abigail never received any communications from Anthony Cameron, and he never received any communications from her. Abigail was not aware of Anthony Cameron's death until a private investigator informed her of this circumstance. Abigail was approximately three years old the last time she ever saw or was with Anthony Cameron.

Abigail argues that the issue of damages for loss of society and companionship is for the jury to determine at trial. Abigail primarily relies on the following particulars in opposition to summary judgment. Abigail initially lived with Anthony Cameron and her mother in Hattiesburg. She possesses hundreds of photographs of the three of them together from that period of time. After Abigail learned that the decedent was her father when she was around thirteen, she intermittently searched for him. Abigail was able to make contact with Anthony Cameron's sister shortly before his death.

Abigail also testified as follows at deposition regarding the nature of her relationship with the decedent:

Q.   Tell me about your loss.

A.   I lost a father. Whether or not I've physically lived with him since I was any given age or not -- especially given the fact that I never knew that the person that I was living with in fear of every day of my life was not my actual father -- I thought I just had horrible luck and I just got a

        really crappy dad.  And not only was that not the case, but when I finally got the information and then finally got to an age and had the resources where I was able to kind of reach out a little bit and work on trying to fix everything that had kind of been done, you know, to keep that from me, in less than a year after that being something I could use, he was killed. And I know, you know, you hear the saying, "It's better to have loved and lost than never to have loved at all."  I think it probably would hurt less to have a relationship with a father that is a father and that cares and have to bury them than to not have one ever.  And now I know I can't ever. It's really bad.

        . . . .

A.    I can't say that I didn't have a relationship with my father because for an entire season of every year, I learned today, he was affected by the fact that he wasn't speaking to me.  And everything that I was told today -- not me, but you were told and I heard -- I've never heard any of that before.  The things that I heard today make me feel like my mother completely kept me from ever being able to have a father.

Q.    To have what?

A.    To have my father.  So I can't say that I didn't have a relationship because a situation that involved two people, whether they were together or not, affected the both of them.  And that's still a relationship to me.

(Abigail Cameron Dep. [146-1] 40:19-42:13.)

        Mississippi's wrongful death statute, section 11-7-13 of the Mississippi Code, has been interpreted to allow for the recovery of, *inter alia*, "the loss of society and companionship of the decedent."  *Gatlin v. Methodist Med. Ctr.*, 772 So. 2d 1023,1030-31 (¶ 24) (Miss. 2000) (citation omitted).[1]  Each wrongful death beneficiary is entitled to recover his or her respective share of these damages.  *See River Region Med. Ctr. v. Patterson*, 975 So. 2d 205, 208 (¶ 10) (Miss. 2007) (quoting *Long v. McKinney*, 897 S.

---

[1] The substantive law of Mississippi applies in this diversity action.  *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78, 58 S. Ct. 817, 82 L. Ed. 1188 (1938).

2d 160, 169 (Miss. 2004)).  The Mississippi Supreme Court has held that where there is evidence of "*some* damages for loss of society and companionship," the issue is the extent of the damages and not the viability of the claim.  *Gatlin*, 772 So. 2d at 1023 (¶¶ 29-31) (reversing the trial court's grant of a directed verdict in favor of the defendants on damages and liability).  Mississippi's highest court has also found an award for loss of society and companionship to be inappropriate where the plaintiffs' evidence at trial only concerned the defendant's liability.  *See Patterson*, 975 So. 2d at 206 (¶ 1), 207 (¶ 8), 208 (¶ 12)  (reversing and rendering a jury award of $1,710,000 since "no evidence regarding any damages sustained from loss of society and companionship" was presented to the jury).

Viewing the summary judgment record in the nonmovant's favor, the Court finds a dispute regarding the extent of Abigail's damages for loss of society and companionship, as opposed to a complete absence of proof.  That Abigail lived with the decedent at an early age and had an apparent desire to reconcile with him prior to his death can reasonably support the inference that she experienced "*some* damages for loss of society and companionship."  *Gatlin*, 772 So. 2d at 1023 (¶ 29); *see also* Miss. Code Ann. 11-1-60(1)(a) ("'Noneconomic damages' means *subjective* . . . loss of society and companionship.") (emphasis added).  Defendants' countervailing considerations can be presented to the jury, the presumptive arbiter of damages under Mississippi law.  *See, e.g.*, *Downs v. Ackerman*, 115 So. 3d 785, 790 (¶ 16) (Miss. 2013) ("The amount of damages is a question for the jury."); *Kennedy v. Ill. Cent. R.R. Co.*, 30 So. 3d 333, 337 (¶ 10) (Miss. 2010) (providing that the amount of a damage award "is primarily a question of fact for the jury").

Moreover, Defendants' argument that Abigail can recover *nothing* for loss of society and companionship because she had no relationship with the decedent for numerous years prior to his death is unsupported by any opinion cited in their summary judgment briefing,[2] and contradicted by *Clemons v. United States*, No. 4:10cv209, 2012 WL 5364737 (S.D. Miss. Oct. 30, 2012).  In *Clemons*, the district court held that the grandmother and siblings of Aubrey Anna Clemons, a thirty-week-old unborn child, could recover damages for loss of society and companionship resulting from her death. 2012 WL 5364737, at *13-14.  In doing so, the court rejected the defendant's argument that these damages were unavailable due to the absence "of any preexisting relationship between Aubrey" and the plaintiffs.  *Id.* at *13.  The court reasoned the defendant should not benefit from the fact that it "deprived the siblings of the opportunity to form a relationship and do all the things that sisters and brothers do with each other . . . ."  *Id.*[3]  Analogously, the Defendants here should not be allowed to reduce Abigail's claim to zero as a matter of law if their acts or omissions caused Anthony Cameron's death and prevented Abigail from *reestablishing* a relationship with him.

### III.  CONCLUSION

---

[2] Although the plaintiff before the Mississippi Supreme Court in *Patterson* was the "decedent's estranged husband," the court did not reference this fact in support of its holding that damages for loss of society and companionship were unavailable since "no evidence" was presented regarding those damages.  *Patterson*, 975 So. 2d at 206 (¶ 2), 208 (¶ 12).

[3] The court also found that the defendant's argument ignored the 2004 amendment to Mississippi's wrongful death statute, which authorized recovery for the death of a "person *or of any unborn quick child*."  *Id.* (citation omitted).

Genuine issues for trial exist as to Abigail Cameron's claim for loss of society and companionship.

IT IS THEREFORE ORDERED AND ADJUDGED that the Defendants' Motion for Partial Summary Judgment [135] is denied.

SO ORDERED AND ADJUDGED this the 13th day of July, 2015.

*s/Keith Starrett*
UNITED STATES DISTRICT JUDGE