IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

ANGELA CAMERON, AS THE
ADMINISTRATRIX OF THE ESTATE OF
ANTHONY CAMERON, DECEASED, FOR
AND ON BEHALF OF HERSELF, AND ON
BEHALF OF ALL OTHER PARTIES
ENTITLED TO RECOVER FOR THE
WRONGFUL DEATH OF ANTHONY
CAMERON                                                                                                        PLAINTIFFS

V.                                                                     CIVIL ACTION NO. 2:13cv243-KS-JCG

WERNER ENTERPRISES, INC., A FOREIGN
CORPORATION, AND TERRY J. GUILLORY,
AN INDIVIDUAL                                                                                                DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on the Motion to Exclude or Limit Expert Testimony of Emmett E. "Buddy" Gamel, III ("Motion to Exclude Gamel") [121] and Motion to Exclude or Limit Expert Testimony of Chris Bloomberg ("Motion to Exclude Bloomberg") [123] of the Defendants Werner Enterprises, Inc. ("Werner") and Terry J. Guillory ("Guillory"). Having considered the submissions of the parties, the record, and the applicable law, the Court finds that both motions should be granted in part and denied in part.

## I.  BACKGROUND

This wrongful death action arises out of a commercial vehicle accident that occurred on December 3, 2012, in Perry County, Mississippi. The Uniform Crash Report [116-1] indicates that the accident occurred at approximately 4:00 a.m. in heavy fog. The decedent, Anthony Cameron ("Cameron"), was the driver of one of the vehicles involved in the accident. Guillory was the driver of the other vehicle. Cameron

was driving his tractor-trailer east on U.S. Highway 98, when it collided with Guillory's tractor-trailer. Guillory was attempting to cross the eastbound lanes of the highway in order to turn left onto the westbound lanes at the time of the collision. Cameron was killed in the accident. Guillory was acting within the course and scope of his employment with Werner at the time of the incident.

On November 1, 2013, Angela Cameron (as the Administratrix of the Estate of Anthony Cameron, on behalf of herself, and on behalf of all other parties entitled to recover for the wrongful death of Anthony Cameron) filed suit against Werner and Guillory in this Court. (*See* Compl. [1].) Angela Cameron was Anthony Cameron's wife at the time of his death. The Complaint asserts allegations of negligence and gross negligence, and requests compensatory damages, punitive damages, interest, attorney's fees, and costs. Subject matter jurisdiction is asserted on the basis of diversity of citizenship pursuant to Title 28 U.S.C. § 1332.

On May 1, 2014, Plaintiff served her Disclosure of Expert Witnesses [121-1]. Among other witnesses, Plaintiff identified Chris Bloomberg, P.E. ("Bloomberg") and Emmett E. Gamel, III ("Gamel") as experts she may call to testify at the trial of this cause. Guillory and Werner ("Defendants") seek the exclusion of these witnesses' opinions pursuant to the subject motions.

## II. DISCUSSION

### A. Standard of Review

Federal Rule of Evidence 702 provides that:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

> **(a)** the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> **(b)** the testimony is based on sufficient facts or data;
>
> **(c)** the testimony is the product of reliable principles and methods; and
>
> **(d)** the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. A trial judge has a "gatekeeping obligation" under Rule 702 to ensure that all expert testimony is both reliable and relevant. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147, 119 S. Ct. 1167, 143 L. Ed. 2d 238 (1999) (citing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993)). Rule 702's "relevance prong requires the proponent to demonstrate that the expert's 'reasoning or methodology can be properly applied to the facts in issue.'" *Johnson v. Arkema, Inc.*, 685 F.3d 452, 459 (5th Cir. 2012) (quoting *Curtis v. M&S Petroleum, Inc.*, 174 F.3d 661, 668 (5th Cir. 1999)). In order to be reliable under Rule 702, the expert opinion must "be grounded in the methods and procedures of science and . . . be more than unsupported speculation or subjective belief." *Id.* (citations omitted).

Daubert set forth several factors bearing on the admissibility of expert testimony, including, but not limited to, whether the expert's theory or technique can be tested, whether the theory or technique has been published or subjected to peer review, and the general acceptance of the theory or method in the applicable community. 509 U.S. at 593-94. The Supreme Court later recognized that *Daubert*'s factors "may or may not be pertinent in assessing reliability," since the specific issue, the subject of the expert's

testimony, and the expert's area of expertise will vary from case to case. *Kumho Tire Co.*, 526 U.S. at 150 (citation omitted). Nonetheless, "a trial court should consider the specific factors identified in *Daubert* where they are reasonable measures of the reliability of expert testimony." *Id.* at 152.

The court's responsibility "is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id.* However, the judge's role as gatekeeper is not meant to supplant the adversary system since "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596 (citation omitted). "The proponent need not prove to the judge that the expert's testimony is correct, but she must prove by a preponderance of the evidence that the testimony is reliable." *Johnson*, 685 F.3d at 459 (quoting *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998)). Although the court's focus should be on the expert's principles and methodology, as opposed to the conclusions they generate, "nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146, 118 S. Ct. 512, 139 L. Ed. 2d 508 (1997).

**B. Motion to Exclude Gamel [121]**

Plaintiff designated Gamel as an expert in the field of commercial vehicle maintenance. (*See* Pl.'s Disclosure of Expert Witnesses [121-1] at p. 2.) Per his

deposition testimony, Gamel has owned a truck repair facility for approximately twenty-three (23) years. (*See* Gamel Dep. [121-3] 7:12-24.) Also, Gamel has "44 years of actual experience working on air brakes on trucks and trailers, and 19 years' worth of doing actual forensic mechanical inspections on vehicles in accidents." (Gamel Dep. [121-3] 15:15-23.) Gamel's written report provides the following opinions concerning his inspection of the tractor-trailer operated by Cameron: "Tractor and trailer combination exhibits sufficient braking capabilities to allow stopping within reasonable distance. There are no issues that would have been visible to the driver while performing a pre-trip inspection of the tractor or trailer." (Gamel Rep. [131-2 at ECF p. 3].) Defendants seek the exclusion of both of these opinions. Only the Defendants' request for exclusion as to the first opinion is well taken.

> **1. Tractor and trailer combination exhibits sufficient braking capabilities to allow stopping within reasonable distance.**

Defendants argue that this opinion should be excluded because it is unreliable and would not assist the jury at trial. The Court agrees. As an initial matter, the opinion is too imprecise and vague to help the trier of fact. "[A] trial court may exclude expert testimony that is imprecise and unspecific or whose factual basis is not adequately explained." *Smith v. Johnson & Johnson*, No. 3:08cv245, 2011 WL 3876997, at *5 (S.D. Miss. Aug. 31, 2011) (quoting *S. Grouts & Mortars v. 3m Co.*, 575 F.3d 1235, 1245 (11th Cir. 2009)), *aff'd*, 483 Fed. Appx. 909 (5th Cir. 2012); *see also Boye v. Connor Corp.*, No. 12-CV-12108, 2014 WL 4772720, at *5 (E.D. Mich. Sept. 24, 2014) (finding the opinion that modifications were "recently" made to a machine to be imprecise, unspecific, and unhelpful to the jury's determination of when the

modifications were actually accomplished). At his deposition, Gamel could not "put an exact amount as far as footage on there" in defining "a reasonable distance." (Gamel Dep. [121-3] 20:6-11.) Gamel similarly testified, "I can't give you an amount of distance it would stop in, but it, obviously, had been stopping." (Gamel Dep. [121-3] 54:4-8.) Gamel understood that knowing not only could a tractor-trailer stop, but also, how quickly it could stop was pertinent. (*See* Gamel Dep. [121-3] 53:17-21.) He, nonetheless, could not provide the latter information presumably because that is "not within . . . [his] scope of work . . . ." (Gamel Dep. [121-3] 52:23-53:21.) Gamel's most descriptive explanation of what he meant by "a reasonable distance" appears to be as follows: "I would say that I would not be uncomfortable driving in front of that truck with my family in the car, put it that way." (Gamel Dep. [121-3] 20:11-14.) This subjective speculation fails to enable an "objective, independent validation of the expert's methodology" and would not assist the jury at trial. *Moore*, 151 F.3d at 276. Under *Daubert*, the trial judge "must determine whether the evidence is genuinely scientific, as distinct from being unscientific speculation offered by a genuine scientist." *Id.* at 278 (quoting *Rosen v. Ciba-Geigy Corp.*, 78 F.3d 316, 318 (7th Cir. 1996)); *see also Sportsband Network Recovery Fund, Inc. v. PGA Tour, Inc.*, 136 F.3d 1329, 1998 WL 44564, at *10 (5th Cir. Jan. 30, 1998) (affirming the district court's exclusion of speculative expert testimony that would not aid the trier of fact).

The subject opinion also falters due to the lack of sufficient supporting facts or data. It is well established within the Fifth Circuit "that '[w]ithout more than credentials and a subjective opinion, an expert's testimony that 'it is so' is not admissible.'" *Brown v. Ill. Cent. R.R. Co.*, 705 F.3d 531, 537 (5th Cir. 2013) (quoting *Hathaway v. Bazany*,

507 F.3d 312, 318 (5th Cir. 2007)). Gamel testified that his opinion regarding the tractor-trailer's brakes was "a judgment call" based on his years of experience, his visual inspection of the brakes, and his activation and testing of the brakes without driving the vehicle. (Gamel Dep. [121-3] 15:15-23, 17:8-14, 18:9-19:2.) These circumstances arguably support Gamel's conclusion that the tractor-trailer "did have braking capabilities." (Gamel Dep. [121-3] 20:16-18.) However, the Court finds no objective criteria enabling Gamel to testify as to the reasonableness or sufficiency of the vehicle's braking capabilities. Gamel testified that he neither performed any brake force calculations nor knew how to perform the calculations to determine braking efficiency. (*See* Gamel Dep. [121-3] 15:6-14, 27:21-25.) Further, determining the function of each brake was not within his "scope of work." (Gamel Dep. [121-3] 17:2-6.) As noted above, determining how quickly the truck could stop was also not within the scope of Gamel's work. (*See* Gamel Dep. [121-3] 53:17-21.) Gamel surmised that the truck "had braking capabilities that kept it out of trouble" prior to the subject accident in part because it "had been to Mobile and back . . . ." (Gamel Dep. [121-3] 52:23-53:6.) A jury could reach this same conclusion without the aid of expert testimony based on its own reasoning and analysis. *See Peters v. Five Star Marine Serv.*, 898 F.2d 448, 450 (5th Cir. 1990) (holding that expert testimony was unnecessary where the jury could adeptly assess the "situation using only their common experience and knowledge").

Ultimately, the reliability of Gamel's opinion that the subject tractor-trailer possessed "*sufficient* braking capabilities to allow stopping within [a] *reasonable*

distance"[1] has not been proven by a preponderance of the evidence. *See Johnson*, 685 F.3d at 459. Nothing in Rule 702 requires the Court to admit expert testimony that is founded on "the *ipse dixit* of the expert" and unsupported by objective evidence. *Gen. Elec. Co.*, 522 U.S. at 146. Thus, this opinion will be excluded from the jury at trial.

### 2. There are no issues that would have been visible to the driver while performing a pre-trip inspection of the tractor or trailer.

Defendants contend that this opinion constitutes inadmissible speculation, as opposed to competent expert testimony. In support of this argument, Defendants initially fault Gamel for testifying at deposition that he did not know whether the Federal Motor Carrier Safety Regulations require a pre-trip inspection of the brake pads. Notwithstanding this admission, Gamel also testified that "the trucking industry or truck driver is not going to crawl up underneath the vehicle, none of them do." (Gamel Dep. [121-3] 24:12-15.) This testimony appears to comport with the federal regulation pertaining to pre-trip inspections of readily visible service brake components, which requires a driver to perform "as thorough a visual inspection as possible without physically going under the vehicle . . . ." 49 C.F.R. § 392.7(b). Gamel also testified, "I don't believe the driver[,] if he had gone underneath that trailer[,] could have looked at the brake pads and seen that they were an out-of-service item." (Gamel Dep. [121-3] 25:13-16.) Other portions of Gamel's deposition reference objective criteria or standards for determining if a brake is out of service, including federal regulations, and Gamel's application of those standards to his inspection of the subject vehicle's brakes. (*See* Gamel Dep. [121-3] 10:14-11:20, 32:4-35:5.) Thus, the Court does not find that

---

[1] (Gamel Rep. [131-2 at ECF p. 3]) (emphasis added).

Gamel's opinion regarding what could be determined via a visible inspection of the vehicle merely constitutes conjecture or speculation.

On the whole, the Defendants' criticisms of this opinion go to the weight or credibility of the testimony and not its admissibility. Defendants may attack the opinion through "[v]igorous cross-examination" and the "presentation of contrary evidence" at trial. *Daubert*, 509 U.S. at 596. Thus, this particular request for exclusion is denied.

### C. Motion to Exclude Bloomberg [123]

Plaintiff designated Bloomberg as an expert in the fields of forensic accident investigation, analysis, and reconstruction. (*See* Pl.'s Disclosure of Expert Witnesses [121-1] at p. 1.) Per his curriculum vitae, Bloomberg is a professional engineer specializing in accident reconstruction. Further, Bloomberg "has analyzed in excess of a thousand accidents involving cars, tractor-trailers, pedestrians, bicyclists, motorcycles, heavy trucks, etc." (Doc. No. [133-1] at p. 1.) On June 18, 2014, Bloomberg submitted a written report containing his opinions relating to the accident at issue in this litigation. (*See* Bloomberg Rep. [123-1 at ECF pp. 13-15].) Defendants challenge each of the opinions listed below.

> **1. Mr. Cameron began to take evasive action by entering the left turn lane but he then braked hard and tried to swerve to the right. His vehicle overturned onto its left side just before it crashed into the left side of the Werner trailer near its axles. . . . The calculations based on this evidence place the approach speed of the American Concrete vehicle below the posted speed limit of 65 mph.**

The following portions of Bloomberg's deposition are pertinent to the admissibility of his statement that Cameron took evasive action by entering the left turn lane:

Q. At what location in the roadway do you first find physical evidence of the positioning of the American Concrete as far as its western most location?

A. In the left turn lane.

Q. Right. All right. To what do you attribute that vehicle being present there?

A. Most likely trying to avoid to the left until he determines that it's actually a trailer and it's blocking the whole road and he's trying to get around it to the right.

Q. So do you have any opinion as to where to the west Mr. Cameron began an invasive maneuver?

A. No. It would be a steering maneuver, and I haven't -- I mean, it would be a range depending on how he steered. I haven't looked into that.

. . . .

Q. Even in your scenario, Mr. Bloomberg, do you have him braking before or as part of the steering maneuver?

A. I don't at this point, because there's no physical evidence that I can attribute to the American Concrete truck prior to that 85 feet.

. . . .

Q. What about as far as -- are you making any assumptions as far as his steering maneuver, whether it's an aggressive versus a normal lane change maneuver?

A. I haven't evaluated the steering maneuver. Again, we don't have physical evidence in that regard.

Q. Do you assume for purposes of your analysis that he began in the slow lane?

A. I don't -- I don't know.

Q. You don't know one way or the other whether he --

A. At this point, I don't know, I mean, there's no -- again, there's no physical evidence in that regard.

Q. So there's no assumption either way for purposes of your analysis?

-10-

> A.   That's correct. I don't have any physical evidence to evaluate steering, and so I haven't done that. I think I've said that numerous times. I don't know any other way to say it.

(Bloomberg Dep. [123-3] 47:1-19, 48:10-16, 52:5-53:2.) These sworn statements negate the existence of any objective, scientific basis for the conclusion that Cameron entered the left lane as part of some evasive steering maneuver. Therefore, this speculative determination is inadmissible. *See Guillory Domtar Indus. Inc.*, 95 F.3d 1320, 1331 (5th Cir. 1996) (affirming the exclusion of expert testimony based on speculation and altered facts). Defendants' critiques of the remainder of the above-quoted paragraph can be resolved through "the adversary system" at trial. *See Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 250 (5th Cir. 2002) (citation omitted).

> **2.   Based on his earlier steering to the left turn lane, he [Cameron] most likely saw the Werner truck begin to enter the highway and, in response to that, he pulled to the left hoping that the Werner driver would stop and leave him enough room to pass by. When the Werner truck did not stop but instead kept coming across the eastbound lanes, Mr. Cameron was placed in a situation where he had nowhere to go.**

As provided above, there is no "physical evidence [for Bloomberg] to evaluate steering." (Bloomberg Dep. [123-3] 52:21-53:2.) Further, the proponent of Bloomberg's testimony, the Plaintiff, has failed to proffer any scientific basis for Bloomberg opining as to what Cameron hoped or thought immediately prior to the accident. The opinions expressed in the first sentence of the above-quoted paragraph will be excluded as a result. The opinion stated in the second sentence can be tested through measurements of the section of the roadway blocked by Guillory's tractor-trailer at the time of the collision. (*See* Bloomberg Dep. [123-3] 97:21-98:5.) Therefore, this opinion will not be

excluded. *Cf. Layssard v. United States*, No. 06-0352, 2007 WL 4144936, at *3 (W.D. La. Nov. 20, 2007) (holding that a biomechanical engineer could not testify as to medical causation, but could at least state the calculations and measurements involved in an accident).

> **3.** **Mr. Guillory was reportedly leaving the area intending to head west on US 98 after visiting the BP gas station located on the southwest corner of the intersection where the crash occurred. In leaving the gas station by heading north on Mt. Gillard Church Road, Mr. Guillory was incorrectly using the entrance to the gas station as an exit. The correct route for Mr. Guillory to have taken would have involved exiting the gas station at the west end of the gas station property, directly north of the diesel fuel pumps, which were designed to be entered and exited from south to north. The exit from the gas station was about 300 feet west of Mt. Gillard Church Road and involved turning right onto eastbound US 98 before, if intending to travel west, changing lanes to the left turn lane to make a U-turn at Mt. Gillard Church Road. By taking such a route Mr. Guillory would not have blocked more than one lane of eastbound US 98 at a time and this collision would have most likely been avoided.**

Defendants argue that these opinions should be excluded because they are unreliable and outside of Bloomberg's area of expertise. Plaintiff argues that Bloomberg is sufficiently qualified to offer opinions regarding a hypothetical scenario under which Guillory's tractor-trailer enters the roadway via a separate route and the probability of an accident occurring under that scenario. The Court largely finds that the Plaintiff has the better argument.

Hypothetical scenarios are not outside the scope of permissible expert testimony. *See, e.g.*, Fed. R. Evid. 702 advisory committee's note to 2000 amendments (providing that the language of the Rule "is broad enough to allow an expert to rely on hypothetical

facts that are supported by the evidence"); *Little v. Johnson*, 162 F.3d 855, 862 (5th Cir. 1998) (holding that the expert's testimony based on a hypothetical set of facts was appropriately admitted by the trial judge). Further, an expert's knowledge, training, or experience in one field may permit her to provide opinions concerning a related discipline. *See United States v. Liu*, 716 F.3d 159, 168-69 (5th Cir. 2013). "[A]n expert witness is not strictly confined to his area of practice, but may testify concerning related applications; a lack of specialization does not affect the admissibility of the opinion, but only its weight." *Id.* (quoting *Wheeler v. John Deere Co.*, 935 F.2d 1090, 1100 (10th Cir. 1991)). Defendants do not challenge Bloomberg's qualifications in the fields of forensic accident investigation, analysis, and reconstruction. Defendants also do not dispute Bloomberg's statement that he "has analyzed in excess of a thousand accidents . . . ." (Doc. No. [133-1] at p. 1.) Given Bloomberg's undisputed qualifications and experience pertaining to accident reconstruction, he may testify as to the probability of the accident occurring under the above-referenced hypothetical scenario without running afoul of Rule 702's requirements.

However, Bloomberg will not be allowed to testify that Guillory took an "incorrect" route, or that a hypothetical route was the "correct" path for Guillory to take. Bloomberg admitted at his deposition that he did not know whether the route taken by Guillory "was legal or not." (Bloomberg Dep. [123-3] 55:24:56:19.) Bloomberg also lacks knowledge regarding whether the entrance and exit signs on the subject gas station were posted for traffic flow, safety, or convenience concerns. (*See* Bloomberg Dep. [123-3] 112:10-113:7.) Thus, testimony from Bloomberg labeling Guillory's route as *correct* or *incorrect* would be speculative and unreliable. Bloomberg's opinion that Guillory utilized an

*incorrect* route can also be construed as an impermissible legal conclusion. Federal Rule of Evidence "704 abolishes the per se rule against testimony regarding ultimate issues of fact." *Owen v. Kerr-McGee Corp.*, 698 F.2d 236, 239 (5th Cir. 1983) (citations omitted). However, nothing in the Rule permits an expert witness to express legal conclusions or to tell a jury what result it should reach. *Id.* at 240; *see also Arreola v. Epic Drivers, Inc.*, No. 05-2788, 2006 WL 5153148, at *2 (E.D. La. Oct. 25, 2006) (holding that the plaintiff's safety expert could not testify that the defendants were negligent).

> **4.     By attempting to drive directly across the eastbound lanes of US 98, Mr. Guillory was placing his vehicle across the eastbound lanes of traffic at the same time as he was required to stop for the posted stop sign in the median. He would have either had to disobey that stop sign and risk entering the westbound lanes of US 98 without stopping, or stop his vehicle with the trailer blocking most or all of the eastbound lanes. Both options were unsafe and inappropriate; had he exited the gas station via the Truck Exit, he could have entered the median and stopped at the Stop sign without blocking the eastbound through lanes.**

The parties present substantially the same arguments regarding these opinions as those discussed in the preceding section of this opinion. For essentially the same reasons as stated above, Bloomberg will be allowed to testify as to the likelihood of Guillory blocking the eastbound lanes of the highway had he taken an alternate path. Bloomberg will not be permitted to testify that Guillory's actual route was "unsafe" or "inappropriate." *See Arreola*, 2006 WL 5153148, at *2; *Ross v. Noble Drilling Corp.*, No. Civ.A. 03-0015, 2005 WL 53306, at *2, 3 (E.D. La. Jan. 5, 2005) (excluding the opinion

that the defendants did not perform any unsafe acts since it came too close to drawing a legal conclusion on the issue of negligence).

### 5. Summation As to Bloomberg's Opinions

Bloomberg is precluded from testifying at trial that Anthony Cameron took evasive action by entering or steering to the left lane of the highway. Bloomberg may also not testify that Anthony Cameron entered the left lane hoping that Terry Guillory would stop and leave enough room for him to pass. Furthermore, Bloomberg is prohibited from testifying that Terry Guillory took an "incorrect," "unsafe," or "inappropriate" route in crossing U.S. Highway 98 at the Mt. Gillard Church intersection, or that the above-discussed hypothetical route was the "correct," "safe," or "appropriate" path for Guillory to take. Defendants' challenges to Bloomberg's testimony are otherwise denied.

### 6. Undisclosed Exhibits

Defendants object to Bloomberg using at trial any exhibits that have not been previously disclosed during discovery. Plaintiff concedes this objection, provided that Bloomberg is allowed to utilize exhibits that are representations of materials previously disclosed or that are otherwise not unknown to the Defendants. The Court sustains this objection without prejudice to the Plaintiff's ability to show at trial that a particular exhibit was previously disclosed to the Defendants in such a form that its utilization by Bloomberg would not amount to unfair prejudice or trial by ambush.

### III.  CONCLUSION

IT IS THEREFORE ORDERED AND ADJUDGED that the Defendants' Motion to Exclude Gamel [121] is granted in part and denied in part, as outlined above.

IT IS FURTHER ORDERED AND ADJUDGED that the Defendants' Motion to Exclude Bloomberg [123] is granted in part and denied in part, as outlined above.

SO ORDERED AND ADJUDGED this the 21st day of July, 2015.

*s/Keith Starrett*
UNITED STATES DISTRICT JUDGE